UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**WILZAYLAN BRITO SOLIS,**

    **Plaintiff,**

v.                                              Case No: 5:23-cv-208-JSM-PRL

**AMERICAN EXPRESS NATIONAL BANK et al.,**

    **Defendants.**

### REPORT AND RECOMMENDATION[1]

In this Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, case, Defendant Experian Information Solutions, Inc. ("Experian"), has moved to compel arbitration pursuant to an agreement between it and Plaintiff. (Doc. 106). Because Plaintiff has not shown that the agreement is unconscionable or otherwise unenforceable, I submit that Experian's motion to compel arbitration should be granted.

    **I.**    **BACKGROUND**

According to the allegations of the second amended complaint (Doc. 74), this action arises with the theft of Plaintiff's identity. After discovering his identity was stolen, Plaintiff began contacting the defendants to inform them that his identity was stolen and to rectify collection and credit reporting issues. Plaintiff sent a letter to Experian to dispute his inaccurate credit report. (Doc. 74 at ¶ 129). However, Experian continued to report most of

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

the fraudulent accounts and personal information related to the identity theft. Thereafter, Plaintiff filed a complaint under the FCRA against the defendants, including Experian.

Now, Experian moves to compel arbitration, under an agreement between its affiliate, ConsumerInfo.com, Inc. ("ECS"),[2] and Plaintiff, that was entered into when Plaintiff became a member of CreditWorks. (Doc. 106 at 10-11). Prior to initiating this action, Plaintiff enrolled in CreditWorks, agreeing to its "Terms of Use," which contains an arbitration agreement that is enforceable by Experian. *Id.*; (Doc. 106-1).

## II.   LEGAL STANDARDS

Absent an arbitration agreement, parties cannot be compelled to arbitrate their claims. *Larsen v. Citibank FSB*, 871 F.3d 1295, 1302 (11th Cir. 2017). Under the Federal Arbitration Act (FAA), 9 U.S.C. § 2, there is "a liberal federal policy favoring arbitration[.]" *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). When an arbitration agreement exists, "questions of arbitrability, when in doubt, should be resolved in favor of arbitration." *Emps. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F. 3d 1316, 1322 (11th Cir. 2001); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983) (noting federal courts "consistently conclude[] that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.").

Under the FAA, arbitration agreements are "on an equal footing with other contracts" and courts must "enforce them according to their own terms." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26; *see AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (FAA establishes "fundamental principle that arbitration is a matter of contract.") (citations omitted). A party

---

[2] "ConsumerInfo.com, Inc. . . . does business as Experian Consumer Services ('ECS')." (Doc. 106 at 10).

seeking to compel arbitration under an agreement must establish: (1) a written arbitration agreement exists, (2) a nexus to interstate commerce exists, and (3) the arbitration agreement covers the claims at issue. *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1293 (S.D. Fla. 2017). Here, the parties do not dispute the existence of an arbitration agreement and a nexus to interstate commerce, and that the arbitration agreement covers the claims at issue. *See Valiente v. StockX, Inc.*, No. 22-cv-22432-BLOOM/Otazo-Reyes, 2022 WL 17551090, at *4 (S.D. Fla. Dec. 9, 2022) ("because the Plaintiff did not deny the existence of the membership agreement and the membership agreement contained an arbitration clause, there was a valid and enforceable agreement to arbitrate.") (citing *Bachewicz v. JetSmarter, Inc.*, No. 18-cv-62570-BLOOM/Valle, 2019 WL 1900332, at *3 (S.D. Fla. Apr. 29, 2019)).

Accordingly, I submit that there is a valid and enforceable agreement to arbitrate.

However, Plaintiff argues that the arbitration agreement is unconscionable, and therefore unenforceable. If a party opposing arbitration establishes,[3] under state law, that a "contract defense such as fraud, duress, or unconscionability. . . applie[s] . . . [it can] invalidate [the] arbitration agreement agreement[.]" *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007).

### III. DISCUSSION

Under Florida law, unconscionability will invalidate an arbitration agreement if a party shows that it has procedural and substantive unconscionability. *See Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1134 (11th Cir. 2010) (citations omitted); *see also Valiente*, 2022

---

[3] Under Florida law, "unconscionability" is an affirmative contract defense that "must be pleaded and proved by the party asserting it." *Neiman v. Galloway*, 704 So. 2d 1131, 1132 (Fla. 4th DCA 1998) (citing *Southworth & McGill, P.A. v. S. Bell Tel. & Tel. Co.*, 580 So. 2d 628, 630–31 (Fla. 1st DCA 1991)).

WL 17551090 at *5. Procedural unconscionability is "[t]he absence of meaningful choice when entering into the contract[,] which 'relates to the manner in which the contract was entered,' and the unreasonableness of the terms is . . . substantive unconscionability, which 'focuses on the agreement itself.'" *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1158–59 (Fla. 2014) (citations omitted). "[P]rocedural and substantive . . . unconscionability must be present, although not necessarily to the same degree, and . . . should be evaluated interdependently rather than as independent elements." *Id.* at 1160–61 (adopting balancing or sliding scale approach to unconscionability).

To determine whether an arbitration agreement is procedurally unconscionable under Florida law, courts consider:

> (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

*Pendergast*, 592 F.3d at 1135 (first citing *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999); then citing *Murphy v. Courtesy Ford, LLC*, 944 So.2d 1131, 1134 (Fla. 3d DCA 2006)). To determine whether an arbitration agreement "is substantively unconscionable, courts consider whether the disputed terms limit available remedies, exclude punitive damages, prevent equitable relief, impose substantial costs, or lack mutuality of obligation with respect to the arbitration of disputes." *U.S. E.E.O.C. v. Taco Bell of Am., Inc.*, No. 8:06CV1792 T30MAP, 2007 WL 809660, at *1 (M.D. Fla. Mar. 15, 2007) (citing *Palm Beach Motor Cars, Inc. v. Jeffries*, 885 So.2d 990, 992 (Fla. 4th DCA 2004)).

First, Plaintiff argues that to use the CreditWorks service, he was required to accept the arbitration agreement but not required to view or read it before accepting. An arbitration

agreement may be found procedurally unconscionable when the party subjected to it lacked an opportunity to know what the agreement required or to reject the agreement. *Howse v. DirecTV, LLC*, 221 F. Supp. 3d 1339, 1343 (M.D. Fla. 2016) (citing *Woebse v. Health Care & Ret. Corp. of Am.*, 977 So. 2d 630, 633–34 (Fla. 2d DCA 2008)).

Here, Plaintiff had an opportunity to read the arbitration agreement and was on notice of its terms. On the (single) page to create a CreditWorks account, there are a few sentences in bold above the button to create an account. (Doc. 106-1 at 8). One sentence states that "**[b]y clicking 'Create Your Account'**," an individual accepts and agrees to the terms of use, including the arbitration agreement, hyperlinked therein. (Doc. 106-1 at 8). The hyperlink was conspicuous, and Plaintiff "could use [it] to read the terms and conditions[.]" *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028–29 (Fla. 4th DCA 2018). The hyperlink was sufficient to put a reasonable prudent person on notice of the arbitration agreement. Thus, I submit that it is not procedurally unconscionable if Plaintiff was unrequired to read the terms before accepting the agreement. *See id.* at 1028–29 (Plaintiff "has no right to shut his eyes or ears to avoid information, and then say that he has no notice.") (quoting *Sapp v. Warner*, 141 So. 124, 127 (Fla. 1932)); *see also Howse*, 221 F. Supp. 3d at 1343.

Further, if an individual were to click the hyperlink, the first page of the terms of use clearly states in bold, capitalized letters "**PLEASE READ THIS AGREEMENT CAREFULLY.**" (Doc. 106-1 at 10). Moreover, the Terms of Use contain uniform bolded, blue, and increased text-size headings, the sixth of which explicitly states "dispute resolution by binding arbitration[.]" (Doc. 106-1 at 12). The first sentence after this heading states "PLEASE READ THIS CAREFULLY. IT AFFECTS YOUR RIGHTS." *Id.* There were several opportunities and encouragement for the plaintiff to read the arbitration agreement

before accepting it. Moreover, Plaintiff does not allege that he was deprived of an opportunity to read the terms or forced to sign them under pressure from Experian or ECS. Thus, the arbitration agreement is not procedurally unconscionable for a lack of notice or opportunity to reject it without penalty. *See Howse*, 221 F. Supp. 3d at 1343–44.

Second, Plaintiff argues that he had far lesser bargaining power than Experian, a sophisticated entity. (Doc. 128 at 14–15). Indeed, Plaintiff argues that he was unable to bargain with Experian, and points to the clause specifically stating that "**IF YOU DO NOT AGREE WITH ANY OF THESE TERMS OR CONDITIONS, DO NOT USE, ACCESS OR ORDER ANY SERVICE OR ACCESS OR USE THE WEBSITES."** (Doc. 106-1 at 10.). However, Plaintiff could have elected to cease access of the CreditWorks website. Simply because Plaintiff "elect[ed] to be bound by an adhesion contract imposed by" Experian is not enough to amount to procedural unconscionability. *See Howse*, 221 F. Supp. 3d at 1344 (citing *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 265 (Fla. 2d DCA 2004)).

Further, Plaintiff argues "that there is no free service in existence through which a consumer can **regularly** check their Experian credit report without being forced to arbitrate all possible claims against Experian." (Doc. 128 at 17) (emphasis added). However, Plaintiff undermines his argument by pointing out, similarly to *Howse* and *Orkin*, that there is another option for checking his Experian credit report,[4] although it is only available once a year and omits a credit score. *See Howse*, 221 F. Supp. 3d at 1344 (noting lack of procedural unconscionability where "purchaser elects to be bound by an adhesion contract imposed by the seller of his or her choice"); *see also Orkin Exterminating Co.*, 872 So. 2d at 265 (same). Plaintiff does not have to use CreditWorks or other free Experian services to check his

---

[4] (Doc. 128 at 16) (referring to "AnnualCreditReport.com").

Experian credit report, he can forego these services or check his score yearly with another service.[5] Finally, as Plaintiff points out, there was bold and capitalized font on the first page of the terms of use agreement specifically stating that "**IF YOU DO NOT AGREE WITH ANY OF THESE TERMS OR CONDITIONS, DO NOT USE, ACCESS OR ORDER ANY SERVICE OR ACCESS OR USE THE WEBSITES.**" (Doc. 106-1 at 10); *see Howse*, 221 F. Supp. 3d at 1344–45 (noting lack of procedural unconscionability due to parties' disparate bargaining power where first page stated purchaser could reject the contract and forego seller's services).

Third, Plaintiff argues that the arbitration agreement is procedurally unconscionable because Experian may unilaterally modify it at will. Under Florida law, a party cannot unilaterally modify a contract, and a unilateral modification is unenforceable. *St. Joe Corp. v. McIver*, 875 So. 2d 375, 382 (Fla. 2004); *SCG Harbourwood, LLC v. Hanyan*, 93 So. 3d 1197, 1200–01 (Fla. 2d DCA 2012) (citing *Dows v. Nike, Inc.*, 846 So. 2d 595, 603 (Fla. 4th DCA 2003)). Here, Plaintiff does not argue that the arbitration agreement (and the terms of use) were unilaterally modified by Defendant. *See Newkirk Constr. Corp. v. Gulf Cnty.*, 366 So. 2d 813, 815 (Fla. 1st DCA 1979) ("a party who alleges a contract has been modified has the burden of proving it"). Possible, rather than actual, unilateral modification of an arbitration agreement fails to render it unenforceable. *See Dows*, 846 So. 2d at 603; *see also Bachewicz*, 2019 WL 1900332 at *4 (rejecting unilateral modification argument where plaintiff did not allege such modification occurred).

---

[5] While Plaintiff argues that consumers are driven to use Experian's credit reporting services by advertisements using celebrities like John Cena, and that Experian is selling consumer's free information, these arguments are unavailing, and fail to point to unconscionability in the terms of the agreement.

Further undercutting Plaintiff's argument is his failure to cite to any governing law holding that if a contract has a provision opening it up to possible unilateral modification it is procedurally unconscionable. *See Gustave v. SBE ENT Holdings, LLC*, No. 19-23961-Civ-Scola, 2020 WL 5819847, at *8 (S.D. Fla. Sept. 30, 2020) (noting plaintiffs' failure to reference governing law regarding unilateral modification). Finally, the provision that Plaintiff argues permits unilateral modification expressly states that "[e]ach time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement." (Doc. 106-1 at 11). Hence, it appears that subsequent modification of the parties' agreement requires consideration (e.g., use of services or websites) and consent, rather than being truly unilateral.[6] *See Newkirk Constr. Corp.*, 366 So. 2d at 815 ("Modifications of contracts must be supported by new consideration as well as the consent of both parties").

Finally, Plaintiff argues that the overbreadth of the agreement renders it procedurally unconscionable. Unhelpfully, Plaintiff cites to law outside of Florida. Regardless, it does not appear that the terms are so overbroad as to render the arbitration agreement unconscionable, and therefore unenforceable. Here, as when arguing substantive unconscionability, Plaintiff contends that the arbitration agreement as written "can be enforced by millions of unknown parties and for claims that have no relation whatsoever to the services under which the original arbitration agreement is entered." (Doc. 128 at 5, 19). However, as Experian points out, the arbitration agreement's terms are limited, lacking such overbreadth as to make it unreasonable and unfair. While the "agreement to arbitrate is intended to be broadly

---

[6] Further, the arbitration provision provides that notwithstanding any provision to the contrary, if ECS makes any changes to the arbitration provision "you may reject any such change and require ECS to adhere to the language in this provision as written at the time of your enrollment or purchase[.]" (Doc. 106-1 at 13).

interpreted" it only subjects to arbitration "disputes and claims . . . directly relating to the provision of any Service and/or . . . any Website[.]" (Doc. 106-1 at 12). The agreement specifically defines Website and Service,[7] both of which appear to be related to the provision of credit information. (Doc. 106-1 at 10). Hence, it does not follow that if "Plaintiff were vacationing in Brazil and was hit by a car . . . owned by MOVA Sociedade de Empréstimo entre Pessoas S.A. ("MOVA") —an Experian-owned company located in Brazil" he would be forced to arbitrate his hypothetical personal injury claim. (Doc. 128 at 7).

Further, Plaintiff argues that the parties capable of enforcing the agreement demonstrate the overbreadth of the agreement's terms.[8] Again, Plaintiff provides an unavailing hypothetical: "[s]uppose Plaintiff has a neighbor who happens to be employed by ECS. . . . [they] have a dispute over where each party's property line ends. . . . Plaintiff's neighbor could compel this real property dispute to arbitration using the ECS Arbitration

---

[7] Specifically, "Website" is defined as "each website and mobile application referred to herein" including: https://usa.experian.com, or any affiliated website (including, but not limited to, **Experian.com, FreeCreditReport.com, FreeCreditScore.com, CreditReport.com, Creditchecktotal.com, CreditScore.com, usa.experian.com, and experian.experiandirect.com**)) or mobile applications (such as the Experian app)[.]" (Doc. 106-1 at 10). "Service" is defined to include:

> products and services, including credit report(s), credit risk score(s), credit monitoring, credit score monitoring and credit score tracking . . ., the receipt of any alerts notifying you of changes to the information contained in your credit report(s), regardless of the manner in which you receive the Services, whether by email or mail, through a website or mobile application, by telephone, or through any other mechanism by which a Service is delivered or provided to you.

*Id.*

[8] Parties capable of enforcing the arbitration provision and having it enforced against them include:
> our respective parent entities, subsidiaries, affiliates (including, without limitation, our service providers), agents, employees, predecessors in interest, successors and assigns, websites of the foregoing, as well as all authorized or unauthorized users or beneficiaries of Services and/or Websites or information under this or prior Agreements between us relating to Services and/or Websites.

(Doc. 106-1 at 12).

Agreement." (Doc. 128 at 8). However, as noted above, arbitrable claims are those "arising out of . . . [the] Agreement directly related to the Services or Websites[.]" (Doc. 106-1 at 12). Hence, it appears that a real property dispute is far beyond the ambit of the agreement, regardless of Plaintiff's hypothetical neighbor's employment.

Likewise, Plaintiff argues that the arbitration agreement's terms allow any Experian customer to subject him to arbitration for any claim. (Doc. 128 at 9–10). However, as discussed above, the scope of arbitrable claims is limited to those "arising out of . . . [the] Agreement directly related to the Services or Websites[.]" (Doc. 106-1 at 12). Additionally, the terms of the arbitration provision explicitly cover only those users "of Services and/or Websites or information under this or prior Agreements between us relating to Services and/or Websites." *Id.* Hence, it does not follow that the arbitration agreement has terms allowing for unreasonable and unfair enforcement by any Experian customer.[9] Accordingly, I submit that the plaintiff has failed to show that the terms of the arbitration agreement are "onerous, unreasonable or unfair." *Complete Interiors, Inc. v. Behan*, 558 So. 2d 48, 52 (Fla. 5th DCA 1990) (discussing how substantive unconscionability can be generally established).

Further compelling the conclusion that the arbitration agreement is not unconscionable is that it provides that "ECS will pay all costs of arbitration, no matter who wins, as long as your claim is not frivolous." (Doc. 106-1 at 12); *see Hobby Lobby Stores, Inc. v. Cole*, 287 So. 3d 1272, 1276 (Fla. 5th DCA 2020) (finding arbitration agreement substantively conscionable where if plaintiff contested agreement's provisions, defendant could "only recover costs, expenses, and attorneys' fees incurred in compelling arbitration"). Likewise, the

---

[9] Further, to the extent that Plaintiff attempts to argue through the guise of unconscionability that his instant claims are unrelated to the arbitration agreement, it is worth noting that directly following the arbitration provision is "FCRA Disclosures[.]" (Doc. 106-1 at 13).

arbitration agreement does not limit the types of damages and relief available. *See* (Doc. 106-1 at 12) ("ARBITRATORS CAN AWARD THE SAME DAMAGES AND RELIEF THAT A COURT CAN AWARD"); *see Hobby Lobby Stores, Inc.*, 287 So. 3d at 1276 ("an arbitration agreement that deprives a claimant of an effective way to vindicate a statutory cause of action in arbitration is substantively unconscionable") (citing *AMS Staff Leasing, Inc. v. Taylor*, 158 So. 3d 682, 688 (Fla. 4th DCA 2015)). Moreover, the arbitration agreement provides that Experian or Plaintiff can compel arbitration, rather than mandating that only Experian (or Plaintiff) could compel arbitration. *Gustave*, 2020 WL 5819847 at *7 (finding unavailing substantive unconscionability argument where parties were mutually obligated to arbitrate).

Finally, here, Plaintiff argues that the hypotheticals he presents demonstrate substantive unconscionability, because under the arbitration agreement, an arbitrator resolves disputes as to the arbitrability of Plaintiff's claims. (Doc. 128 at 10). However, "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 202 L. Ed. 2d 480, 139 S. Ct. 524, 530 (2019) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 983, 944 (1995); citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010)).

"[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc.*, 139 S. Ct. at 530. Here, the arbitration agreement explicitly states that it is "intended to be broadly interpreted and to make all disputes and claims between us directly relating to the provision of any Service and/or your use of any Website subject to arbitration to the fullest extent permitted by law." (Doc. 106-1 at 12). I submit that the arbitration agreement is valid, and it clearly delegates issues of arbitrability to the arbitrator. As stated above, there does not appear

to be an "innumerable" and unidentifiable class of parties who may enforce the arbitration agreement. (Doc. 128 at 19–20). Accordingly, I submit that the plaintiff has failed to show that the delegation clause renders the arbitration agreement unconscionable.

## IV.  RECOMMENDATION

Accordingly, I submit that Plaintiff has failed to show substantive and procedural unconscionability in the arbitration agreement that would invalidate it. Hence, Experian's motion to compel arbitration (Doc. 106), should be **granted**.

Recommended in Ocala, Florida on July 11, 2023.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy