# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**WILZAYLAN BRITO SOLIS,**

     **Plaintiff,**

**v.**                                              **Case No: 5:23-cv-208-JSM-PRL**

**AMERICAN EXPRESS NATIONAL
BANK, et al.,**

     **Defendants.**

## REPORT AND RECOMMENDATION[1]

Defendants Citibank, N.A. ("Citibank"), Radius Global Solutions, LLC ("Radius"), and Midland Credit Management, Inc. ("Midland"), have moved to dismiss Plaintiff's second amended complaint. (Docs. 135, 136, 141); Fed. R. Civ. P. 12(b)(6). Plaintiff has filed responses in opposition. (Docs. 145, 146, 155). Because the second amended complaint is not a shotgun pleading, and states cognizable claims for relief, I submit that the Court should **deny** the motions to dismiss.

## I.   BACKGROUND

According to the allegations in the second amended complaint (Doc. 74), this action arises from the theft of Plaintiff's identity. In 2017, after Hurricane Maria, Plaintiff moved to Florida from Puerto Rico. (Doc. 74 at ¶¶ 78–79). In early 2018, Plaintiff went to open a checking account at a JPMorgan Chase Bank branch in Florida. *Id.* at ¶ 80. When the bank

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

teller asked if Plaintiff wanted to open a new account instead of transferring his account from Massachusetts, Plaintiff explained that he had never been to Massachusetts, and that the account was not his. (Doc. 74 at ¶¶ 80–84). While Plaintiff believed that Chase would resolve the issue, in 2018, he signed up with Credit Karma and saw several accounts on his credit reports that he lacked knowledge of. *Id.* at ¶¶ 83–85. Plaintiff called each creditor that was reporting debts on his credit reports to alert them of the fraud, and in so doing, he provided the creditors with his actual address and requested that they delete the addresses provided by the thief. (Doc. 74 at ¶¶ 86–88). Instead, the creditors used Plaintiff's correct address to send him collection attempts or sent his address to their debt collectors. *Id.* at ¶ 89.

Realizing the creditors were not pursuing the thief, but instead, still reporting the debts on his credit reports, Plaintiff filed a police report on November 25, 2019. (Doc. 74 at ¶ 90). Nothing came out of the police report, and Plaintiff continued contacting the creditors, attempting to correct the issue by informing them that most of the personal information on his credit reports was fraudulent, including addresses, telephone numbers, and employers. *Id.* at ¶¶ 91–92. The credit reporting agencies ("CRAs") apparently forwarded Plaintiff's disputes to "the furnishers" of credit information. *Id.* at 93.[2] On September 14, 2022, Plaintiff filed an IDTheft report with the Federal Trade Commission, identifying "each and every tradeline associated to debts that Plaintiff did not incur." (Doc. 74 at ¶ 94).

On October 11, 2022, Plaintiff sent letters to Equifax and Experian, disputing their inaccurate reporting by explaining that he was a victim of identity theft and including his personal identifiers like address, date of birth, social security number, and a copy of his

---

[2] "Furnishers" includes Defendants American Express National Bank ("Amex"); Capital One, N.A. ("Capital One"); Citibank; Discover Bank ("Discover"); LVNV Funding LLC ("LVNV"); Midland; Resurgent Capital Services, L.P. ("Resurgent"); Synchrony Bank ("Synchrony"); TD Bank USA, N.A. ("TDB"). (Doc. 74 at 1-2).

Florida driver's license.[3] (Doc. 74 at ¶¶ 95–97, 129–31). Plaintiff also attached copies of his reports with the FTC and the police to the letters. *Id.* at ¶ 97, 131. The letters also explained that variations of the plaintiff's name, addresses, and telephone numbers were not his. *Id.* at ¶¶ 99, 133. The letters also identified several accounts as not being opened by Plaintiff, including a Citibank account, a Midland account, and a Capital One account. *Id.* at ¶ 98, 132.

Allegedly, Equifax received Plaintiff's letter on October 14, 2022, and Experian received Plaintiff's letter on October 15, 2022, and both forwarded his letters to the furnishers of the accounts identified in the letters. *Id.* at ¶ 100–01, 119, 134–35. However, Equifax and Experian failed to investigate the dispute, or contact Plaintiff about it, and the furnishers failed to investigate the dispute too. (Doc. 74 at ¶¶ 102, 127, 136–39, 144, 151–54). While Experian removed a Midland account from Plaintiff's report, it was still reporting all the other fraudulent accounts. (Doc. 74 at ¶ 138). Moreover, Plaintiff was sent collection attempts by Midland on August 24, 2022, and Radius on November 12, 2022. (Doc. 74 at ¶¶ 230–34, 241).

On May 4, 2023, Plaintiff filed his second amended complaint, asserting claims under, *inter alia*, the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2(b); the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692; the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. § 559.55. In Count V, Plaintiff asserts a claim against Citibank and Midland under the FCRA for failure to conduct an investigation of the disputed information and review all relevant information provided by the customer. (Doc. 74 at 53– 54).[4] In Counts VI and VII, Plaintiff asserts claims for false deceptive, and misleading

---

[3] Plaintiff also sent a letter to Trans Union on October 11, 2022, to dispute its inaccurate reporting. (Doc. 74 at ¶¶ 161–192).

[4] This Count is asserted against "Furnishers" which includes Defendants American Express National Bank ("Amex"); Capital One, N.A. ("Capital One"); Citibank; Discover Bank ("Discover"); LVNV Funding LLC ("LVNV"); Midland; Resurgent Capital Services, L.P. ("Resurgent"); Synchrony Bank ("Synchrony"); TD Bank USA, N.A. ("TDB"). (Doc. 74 at 1-2).

communications in violation of the FDCPA and FCCPA against Radius and Midland. (Doc. 74 at 55, 58).[5] The defendants argue that the second amended complaint fails to state a claim for violations of the FCRA, FDCPA, and FCCPA, and that it should be dismissed as a shotgun pleading. (Docs. 135, 136, 141). Also, Defendant Midland moves in the alternative for a more definite statement under Federal Rule of Civil Procedure 12(e). Fed. R. Civ. P. 12(e).

## II.   STANDARD OF REVIEW

The bare minimum a plaintiff must set forth in her complaint is found in Fed. R. Civ. P. 8. Under Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The United States Supreme Court has explained, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that while particularity is not required under Fed. R. Civ. P. 8, as it is under Fed. R. Civ. P. 9, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely

---

[5] These Counts are asserted against "Debt Collectors" which includes Defendants Credit Control LLC ("Credit Control"); Midland; Radius; and Source Receivables Management, LLC ("SRM"). (Doc. 74 at 2).

consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In short, to survive a motion to dismiss a plaintiff must allege something more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Iqbal* and *Twombly*. First, the court will "eliminate any allegations in the complaint that are merely legal conclusions." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). Then, "where there are well-pleaded factual allegations," the court will "'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

In applying this two-step approach to determine the complaint's sufficiency under Rule 8 (and in turn the plausibility of the claims), the Eleventh Circuit limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Further, the Court can infer "'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682) (brackets omitted).

## III.   DISCUSSION

### A. Shotgun Pleading

First, the defendants argue that the second amended complaint should be dismissed because it is a shotgun pleading. Complaints violating Federal Rules of Civil Procedure 8(a)(2) or 10(b) "are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has

recognized four basic types of shotgun pleadings: (1) a complaint that contains multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that fails to separate into different counts each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants the claim is brought against. *Id.* at 1321–23.

The Eleventh Circuit has repeatedly condemned the use of shotgun pleadings for "imped[ing] the administration of the district courts' civil dockets." *PVC Windows, Inc. v. Babbitbay Beach Constr., N.V.,* 598 F.3d 802, 806 n.4 (11th Cir. 2010). Shotgun pleadings require the district court to sift through allegations to separate the meritorious claims from the unmeritorious, resulting in a "massive waste of judicial and private resources." *Id.* A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6) or for a more definite statement under Rule 12(e). *Paylor v. Hartford Fire Ins.*, 748 F.3d 1117, 1126 (11th Cir. 2014).

Here, the second amended complaint is not a shotgun pleading; it "give[s] the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.2d at 1323–34.[6] While the second amended complaint contains multiple counts, each count does not adopt all the allegations of other counts. *See* (Doc. 74 at 45, 47, 50). Also, the factual allegations are connected to Plaintiff's claims in a sufficient manner—for example, while Citibank argues that Count V incorporates paragraphs 161

---

[6] For the same reasons that the second amended complaint is not a shotgun pleading and has stated cognizable claims for relief, I submit that a more definite statement is unnecessary. Fed. R. Civ. P. 12(e). There are sufficient factual allegations that provide Midland with notice of the claims against it.

through 192, which are unrelated to Citibank, these paragraphs explicitly reference "other . . . [f]urnishers," which includes Citibank. (Doc. 74 at ¶¶ 173, 175). Further, although the defendants claim that the second amended complaint is internally inconsistent, Plaintiff clarifies that these are not inconsistencies. For example, although Equifax allegedly "failed to alert" the furnishers of the alleged identity theft (by not notifying the furnishers directly), Plaintiff alleges that Equifax sent the furnishers his letter claiming identity theft. (Doc. 74 at ¶¶ 111, 119–120)

Further, the second amended complaint lacks "conclusory, vague, and immaterial facts" unconnected to its counts. Moreover, the second amended complaint is separated into counts by cause of action where each is only asserted against some Defendants. Finally, the second amended complaint categorizes the defendants as "Furnishers," Credit Reporting Agencies ("CRAs"), and "Debt Collectors," and makes specific allegations as to the responsibility and actions of the defendants, including Citibank, Radius, and Midland. *See, e.g.*, (Doc. 74 at ¶¶ 127, 230–45). Hence, I submit that the second amended complaint is not a shotgun pleading.

Accordingly, Defendants' motions to dismiss the second amended complaint as a shotgun pleading should be **denied**.

## B.  Failure to State an FCRA Claim

Next, Citibank and Midland argue that in Count V, Plaintiff fails to state an FCRA claim. Under 15 U.S.C. § 1681s-2b, Plaintiff must allege that the defendants failed to: (1) conduct an investigation regarding the disputed information; or (2) review all relevant information the consumer reporting agency ("CRA") provided pursuant to § 1681i(a)(2) of the FCRA; or (3)  report the results of the investigation to the CRA; or (4) modify, delete, or

permanently block the reporting of an item of information that was disputed by a consumer but was inaccurate, incomplete, or unverifiable after any reinvestigation. *Okereke v. Experian Info. Sols., Inc.*, No. 8:18-cv-1347-T-24AAS, 2018 WL 5631047, at *2 (M.D. Fla. Oct. 31, 2018) (denying motion to dismiss 15 U.S.C. § 1681s-2(b) FCRA claim based on identity theft) (quoting *Howard v. DirecTV Grp., Inc.*, 2012 WL 1850922, at *4 (S.D. Ga. May 21, 2012)); *see Milgram v. Chase Bank USA, N.A.*, No. 19-60929-CIV, 2020 WL 409546, at *5 (S.D. Fla. Jan. 25, 2020) (same); *accord Pullman v. Wells Fargo Bank, N.A.*, No. 8:22-CV-2720-VMC-JSS, 2023 WL 3620682, at *5 (M.D. Fla. May 24, 2023) (same).

Here, the complaint specifically makes these allegations as to Citibank and Midland. (Doc. 74 at ¶¶ 119–135, 132–35, 151–60). While Citibank argues that the complaint fails to state a claim under 15 U.S.C. § 1681s-2(b), by lacking specific factual allegations as to what a reasonable investigation would have revealed, courts address such arguments after the exchange of discovery, on a motion for summary judgment. (Doc. 135 at ¶ 15); *Pullman*, 2023 WL 3620682, at *5 ("where 'the details of [the defendant furnisher's] investigative procedures are solely within [defendant's] knowledge and cannot be ascertained until Plaintiffs are permitted to engage in discovery,' plaintiffs need not 'plead specific identifiable facts in support of' allegations that an investigation was unreasonable") (quoting *Rayburn v. Equifax Info. Servs.*, LLC, No. 1:18-cv-03127-TCB-CMS, 2019 WL 1225212, at *4 (N.D. Ga. Jan. 9, 2019), *report and recommendation adopted*, No. 1:18-cv-3127-TCB, 2019 WL 1225204 (N.D. Ga. Feb. 4, 2019) (internal quotations omitted)).

Moreover, the defendants here argue that the complaint fails to state a claim under 15 U.S.C. § 1681s-2(b) because identity theft is a "legal question" rather than a factual one. (Doc. 135 at 6–9, Doc. 136 at 7, & Doc. 141 at 7–8). In support of this argument, Defendants cite

*Milgram v. Chase Bank USA, N.A.*, No. 19-60929-CIV, 2020 WL 409546, at *1 (S.D. Fla. Jan. 25, 2020).[7] In *Milgram*, the district court granted summary judgment in favor of a furnisher and against an identity-theft victim under the FCRA, § 1681s-2(b), "suggesting that her disputes weren't cognizable under the FCRA because they were legal disputes and . . . holding that no genuine issue of material fact existed as to whether [the furnisher's] investigations of [her] disputes were reasonable." *Milgram v. Chase Bank USA, N.A.*, No. 22-10250, 2023 WL 3874276, at *3 (11th Cir. June 8, 2023). Notably, on appeal, the Eleventh Circuit only "agree[d] with the district court on the latter point and so affirm[ed]." *Id.* (only affirming to the extent that "no genuine issue of material fact existed as to whether" furnisher's investigation of consumer dispute was reasonable). Hence, it does not appear that *Milgram* compels the conclusion that identity theft is a "legal question" incapable of redress under the FCRA, particularly on a motion to dismiss.

Likewise, Defendants argue that based on *Uppal*, identity theft is essentially a "legal question" that is not a cognizable claim under 15 U.S.C. § 1681s-2(b). *Uppal v. Wells Fargo Bank, NA*, No. 8:19-CV-1334-T-02JSS, 2020 WL 6150923 (M.D. Fla. Oct. 20, 2020). In *Uppal*, a *pro se* plaintiff claimed that Wells Fargo violated the FCRA by using a forged loan to secure a mortgage and foreclose on her property, and thereafter made false reports to credit reporting agencies that negatively impacted her credit. *Id.* at *1. Ultimately, the court held that a "forgery argument is a legal defense to the debt, rather than a factual inaccuracy in Defendant Wells Fargo's reporting." *Id.* at *2 (citing *Robertson v. v. Robertson*, 61 So. 2d 499, 504 (Fla. 1952) (en banc) ("recognizing forgery as a legal defense to foreclosure actions")).

---

[7] Notably, Defendants cite *Milgram* before its appeal to the Eleventh Circuit. (Doc. 135 at ¶ 12) (citing *Milgram*, 2021 WL 6755283).

Because *Uppal* involves an alleged forgery and foreclosure on a plaintiff's property, rather than identity theft, it is unanalogous to the instant facts. *Id.*

Likewise, Defendants cite to *Hunt* in support of their arguments, but it is also not analogous to the instant facts. *Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 456 (11th Cir. 2019). There, the plaintiff missed mortgage payments leading to a foreclosure on his property. *Id.* at 454–55. Plaintiff paid the foreclosure judgment, but his credit report still included the missing payments, which he disputed. *Id.* at 454–55. The district court dismissed the plaintiff's complaint because he failed to dispute that there were missing payments, and thus the furnisher had reported accurate information and was not liable under the FCRA, § 1681s-2(b). *Id.* at 456. Here, Plaintiff is disputing the accuracy of the information reported by the furnishers, and hence, *Hunt* fails to compel the conclusion that identity theft is a legal question that is not cognizable under the FCRA.

Similarly, Defendants argue that *Chiang* supports the conclusion that identity theft is a "legal question" that is not cognizable under the FCRA. *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 32 (1st Cir. 2010). In *Chiang*, the court affirmed summary judgment on an FCRA claim brought against a furnisher that allegedly failed to adequately investigate disputed furnished information—delinquent phone bills that the plaintiff conceded he had failed to pay. *Id.* at 29, 38. The court held that it was appropriate to grant summary judgment, because the plaintiff "failed to show any actual inaccuracies that [the furnisher] . . . could have found through a reasonable investigation." *Id.* at 38. Unlike *Chiang*, where the plaintiff ultimately did not dispute the accuracy of the furnished information, here, the plaintiff is disputing the accuracy of the furnished information, arguing he never even incurred the debts that the

furnishers are reporting. Hence, it seems that even considering *Chiang*, identity theft presents more than a "legal question" and can underlie an FCRA claim.[8]

Additionally, courts in the Eleventh Circuit regularly deny motions to dismiss FCRA claims that are based on allegations of identity theft. *Okereke v. Experian Info. Sols., Inc.*, No. 8:18-cv-1347-T-24 AAS, 2018 WL 5631047, at *2 (M.D. Fla. Oct. 31, 2018) (denying motion to dismiss 15 U.S.C. § 1681s-2(b) FCRA claim based on identity theft); *Pullman v. Wells Fargo Bank, N.A.*, No. 8:22-CV-2720-VMC-JSS, 2023 WL 3620682, at *5 (M.D. Fla. May 24, 2023) (same).[9] Notably, Plaintiff points out that under 15 U.S.C. § 1681-s2(a)(6), the FCRA places duties on furnishers that specifically relate to information that a consumer alleges results from an identity theft. (Doc. 145 at 13). Hence, I submit that identity theft presents a factual question and is sufficient here to state a claim under the FCRA, § 1681s-2(b).

Finally, Defendants here argue that based on *Milgram*, the complaint "fails to allege how a reasonable investigation . . . would have discovered inaccurate or incomplete information as required by the FCRA." (Doc. 135 at 9). Given that *Milgram* was decided on summary judgment, it seems premature to determine whether there was a reasonable

---

[8] Likewise, Midland refers to *Schuh v. Am. Express Bank, FSB*, No. 17-24345-CIV, 2018 WL 3751467, at *1 (S.D. Fla. May 3, 2018), *report and recommendation adopted*, No. 17-CV-24345, 2018 WL 3730226 (S.D. Fla. May 31, 2018), *aff'd*, 806 F. App'x 973 (11th Cir. 2020). Similarly to *Chiang*, the plaintiff in *Shuh* alleged that furnishers reported inaccurate information by reporting his failure to pay sums due on his credit card account. *Id.* The court held that the plaintiff had failed to state a claim for a § 1681e(b) or § 1681i violation because his allegations of the furnishers "reporting factually inaccurate information [was] only true if Plaintiff [was] correct on the legality of [an] . . . Order extinguishing the underlying debt." *Id.* at *4.

[9] *Accord Morgan v. Trans Union, LLC*, No. 1:19-CV-1526-CC-JKL, 2019 WL 5490624 (N.D. Ga. Aug. 26, 2019), *report and recommendation adopted*, No. 1:19-CV-1526-CC-JKL, 2019 WL 5491807 (N.D. Ga. Sept. 13, 2019) (denying motion to dismiss FCRA claim based on identity theft); *Ball v. Navient Sols., LLC*, No. 1:16-CV-853-WKW-DAB, 2018 WL 1413393 (M.D. Ala. Jan. 19, 2018) (denying motion for summary judgment on FCRA claim premised on identity theft); *Williams v. Student Loan Guarantee Found. of Ark.*, No. 5:12-CV-02940-JHE, 2015 WL 241428, at *8 (N.D. Ala. Jan. 20, 2015) (denying motion to dismiss FCRA claim under § 1681s-2(b) premised on identity theft).

investigation here. *Milgram*, 2021 WL 6755283, at *13; *accord Chiang*, 595 F.3d at 29–30. Indeed, at the pleading stage it is unnecessary for the plaintiff to specifically allege "details of a furnisher's investigation procedures [as they] are solely within the knowledge of the furnisher." *Pullman*, 2023 WL 3620682, at *5 (citing *Rayburn*, 2019 WL 1225212, at *4). Hence, I submit that the second amended complaint states a claim for a violation of the FCRA against Citibank and Midland.

Accordingly, I submit that Citibank and Midland's motion to dismiss Plaintiff's FCRA claim (Count V) should be **denied**.

### C. Failure to State an FCCPA Claim

Next, Radius and Midland argue that the second amended complaint fails to state a claim under the FCCPA, Fla. Stat. § 559.72(9) (Count VII). A violation of the FCCPA occurs if the defendant claims, attempts, or threatens to enforce a consumer debt that it knows is illegitimate or asserts another legal right that it knows is nonexistent. Fla. Stat. § 559.72(9). To state a claim under the FCCPA, Plaintiff must allege that Defendant claimed an illegitimate consumer debt *with* actual knowledge of its violation. *Blake v. Seterus, Inc.*, No. 16-21225-CIV-JLK, 2017 WL 543223, at *3 (S.D. Fla. Feb. 9, 2017). At the motion to dismiss stage, courts find it sufficient if a Plaintiff "only allege[s] circumstantial facts to demonstrate Defendant's actual knowledge of an FCCPA violation." *Id.* (denying motion to dismiss FCCPA claim where plaintiff alleged that "[d]efendant knowingly attempted to enforce, claimed, and asserted a known non-existent legal right to a debt. . . . [and it had a] regular practice to include unincurred, estimated costs in the reinstatement amount, despite" the parties' agreement and guidelines prohibiting such conduct) (first citing *Williams v. Educ.*

*Credit Mgmt. Corp.*, 88 F. Supp. 3d 1338, 1347–48 (M.D. Fla. 2015); then citing *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1363 (S.D. Fla. 2000)).

Here, Plaintiff first alleges that Radius and Midland are "consumer collection agenc[ies]" as opposed to commercial collection agencies. (Doc. 74 at ¶¶ 27, 41). Hence, it can be inferred that Radius and Midland were attempting to collect a consumer debt, sufficient to meet the first requirement of stating a claim for an FCCPA violation. *Id.* at ¶¶ 305–08.[10] Likewise, such an allegation seems sufficient for purposes of Defendants' motion to dismiss Plaintiff's FDCPA claim,[11] particularly given that discovery is likely necessary to ascertain with certainty the consumer nature of fraudulent debts arising from this identity theft. *See Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1306–07 (S.D. Fla. 2016) (citations omitted) (noting that identity theft victim may have difficulty in meeting evidentiary burden of showing "*some* evidence . . . that the debt is consumer in nature" and noting this is consistent with court cases considering "an identity theft victim's claims on motions for summary judgment").

As to the second requirement, Plaintiff alleges that Radius and Midland "had actual and/or imputed notice that Plaintiff disputed the debts [they] were attempting to collect, when [they] and/or the original creditors **received copies of Plaintiff's dispute letters to CRAs, or when Plaintiff disputed the accounts by telephone directly with each separate creditor**." (Doc. 74 at ¶ 223) (emphasis added). Here, Plaintiff provides circumstantial evidence of Midland's and Radius' actual knowledge by alleging that they received his dispute letters or

---

[10] Radius and Midland do not argue that the Court should refuse to consider these allegations because they are not incorporated by reference.

[11] The FCCPA and FDCPA have the same definition of "debt." *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 837 (11th Cir. 2010) (first quoting 15 U.S.C. § 1692a(5); then quoting Fla. Stat. § 559.55(1)).

his telephone calls before making collection attempts. *Id.*[12] Notably, Plaintiff alleges that his phone calls to the creditors alerting them of the identity theft are what provided the collection agencies with his address and information for collection attempts. (Doc. 74 at ¶ 89).

Further, Plaintiff alleges that Midland and Radius made collection attempts on August 24, 2022, and November 12, 2022, after he had filed a police report on November 25, 2019. (Doc. 74 at ¶¶ 230–34, 241). Moreover, Radius made a collection attempt on November 12, 2022, after it allegedly received Plaintiff's forwarded dispute letter from Equifax or Experian (and after Plaintiff had filed a police report and IDTheft report). *Id.* at ¶¶ 90, 94, 230, 233–34, 240–41; *cf. Deutsch v. Arrow Fin. Servs., LLC*, No. 8:08-CV-1469-T-17MAP, 2010 WL 10878520, at *11 (M.D. Fla. Mar. 30, 2010).[13] Finally, Plaintiff alleges that Synchrony Bank (another Defendant) sent him a letter that it had sold Midland a debt on December 1, 2022, after it had received Plaintiff's forwarded dispute letter (that included his IDTheft report and police report). (Doc. 74 at ¶ 233).

Here, Plaintiff provides circumstantial evidence sufficient to support his claim at this stage that Radius and Midland were "required to not send any communications including collection attempts, as [they each] had notice that Plaintiff had stated in writing that he was refusing to pay the debts because the debts did not belong to him." (Doc. 74 at ¶¶ 235, 236

---

[12] Radius and Midland do not argue that the Court should refuse to consider these allegations and others because they are not incorporated by reference.

[13] In *Deutsch*, the court granted a motion for summary judgment, holding that an FCCPA claim was preempted. *Deutsch*, 2010 WL 10878520, at *11. In so holding, the court stated that:

> Even if this [§ 559.72(a)] claim were not preempted, in order to succeed in this claim, Plaintiff . . . would have to establish that Defendant . . . had actual knowledge that the account was fraudulent, but attempted to collect on the account despite this knowledge. Knowledge of a dispute is not the same as knowledge of the fraud. Plaintiff . . . did not file Plaintiff's ID Theft Affidavit until 2008. Plaintiff . . . cannot establish that Defendant . . . had knowledge of the fraud in 2005.

*Id.*

242, 245). At the motion to dismiss stage, these allegations are sufficient to circumstantially evince Radius and Midland had actual knowledge that they were attempting to collect fraudulent debts. *Cf. Read v. MFP, Inc.*, 85 So. 3d 1151, 1154–55 (Fla. DCA 2d 2012) (dismissing FCCPA claim where plaintiff did not allege the FCCPA was violated, and allegations showed no violation where debt collector simply left plaintiff a voicemail requesting a call back); *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1363 (S.D. Fla. 2000) (denying motion to dismiss § 559.72(9) claim based on alleged agency theory of knowledge and stating that "[a]t this stage of the proceedings, the court cannot say that it appears beyond doubt that the plaintiffs can prove no set of facts that would support their claims") (citing *M/V Sea Lion V v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994)).[14]

Accordingly, I submit that Radius' and Midland's motion to dismiss Plaintiff's FCCPA claim (Count VII) should be **denied**.

### D. Failure to State an FDCPA Claim

Finally, Midland and Radius argue that Count VI fails to state a claim for a violation of the FDCPA, 15 U.S.C. §§ 1692c(c) & 1692(e)(2), (e)(8), & (e)(10). (Doc. 74 at 55–56). To state an FDCPA claim, Plaintiff must allege that (1) he was the object of collection activity arising from consumer debt; (2) the defendants are debt collectors as defined by the FDCPA; and (3) the defendants engaged in an act or omission that the FDCPA prohibits. *Kaplan*, 88 F. Supp. 2d at 1361 (quoting *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 470 (M.D. La. 1995)). As discussed above in relation to the FCCPA claim, the plaintiff has sufficiently alleged that the fraudulent debts were consumer in nature. *See Martin v. Allied Interstate, LLC*, 192 F. Supp.

---

[14] Notably, *Deutsch* dealt with the issue of actual knowledge on a motion for summary judgment. *Deutsch*, 2010 WL 10878520, at *11. Hence, it seems more appropriate to ascertain the scope of Defendants' alleged knowledge with the benefit of discovery.

3d 1296, 1306–07 (S.D. Fla. 2016). Further, Plaintiff also alleges that the defendants are debt collectors as defined by the FDCPA, and that they engaged in an activity that the FDCPA prohibits.

Contrary to Defendants' arguments, identity theft may underlie a cognizable claim for an FDCPA violation. *See Martin*, 192 F. Supp. 3d at 1304–05 (rejecting argument that an "identity theft victim can never pursue a claim under the" FDCPA). Second, although Radius and Midland argue that Plaintiff fails to allege facts showing they knew that the debt was disputed or the result of identity theft, the FDCPA is generally a strict liability statute. *See Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011) ("The FDCPA typically subjects debt collectors to liability even when violations are not knowing or intentional") (citing *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010)). While a debt collector may raise the "bona fide error" defense to avoid strict liability,[15] Radius and Midland fail to raise it in their motions to dismiss. *See Owen*, 629 F.3d at 1271. Thus, I submit that the second amended complaint alleges a cognizable claim for relief under the FDCPA.

Accordingly, I submit that Radius and Midland's motion to dismiss Plaintiff's FDCPA claim (Count VI) should be **denied.**

---

[15] "The bona fide error defense allows a debt collector to avoid liability if the debt collector demonstrates that the 'FDCPA violation: (1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error.'" *Denning v. Mankin L. Grp., P.A.*, No. 8:21-CV-2822-MSS-MRM, 2022 WL 3365273, at *8 (M.D. Fla. Aug. 11, 2022), *report and recommendation adopted,* No. 8:21-CV-2822-MSS-MRM, 2022 WL 4139242 (M.D. Fla. Sept. 12, 2022) (quoting *Owen*, 629 F.3d at 1271).

## IV.   RECOMMENDATION

Accordingly, for the above stated reasons, I recommend that the defendants' Rule

12(b)(6) motion to dismiss (Docs. 135, 136, 141) be **denied**.

Recommended in Ocala, Florida on August 18, 2023.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy